IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MILTON H. FRIED, JR., and RICHARD EVANS, for themselves and all others similarly situated<br><br>    Plaintiffs,<br><br>v.<br><br>SENSIA SALON, INC., a Texas Corporation. TEXTMUNICATIONS, INC., a California Corporation, and AIR2WEB, a division of VELTI, INC, a Delaware Corporation,<br><br>    Defendants. | Case No. 4:13-cv-00312 |

**THIRD AMENDED CLASS ACTION**
**COMPLAINT FOR INJUNCTION AND DAMAGES**

Plaintiffs Milton H. Fried, Jr., and Richard Evans bring this class action against Defendants Sensia Salon, Inc., Textmunictions, Inc., and Air2Web a division of Velti, Inc., to stop Defendants' practice of making unsolicited text message calls to cellular telephones without the recipient's express prior consent. Plaintiffs also seek redress for all persons injured by this conduct in the state of Texas. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation and discovery conducted by their attorneys.

1.

## NATURE OF THE CASE

1. In efforts to promote the sale of salon and spa products and services and to promote its trade name generally, Defendant Sensia Salon, Inc., a beauty salon and spa located in Houston, Texas, engaged mobile technology companies including without limitation Defendant Textmunications, Inc., ("Textmunications") to conduct an especially pernicious form of marketing: the unauthorized transmission of advertisements and other messages in the form of "text message" calls to the cellular telephones of consumers throughout Texas.

2. In turn, Textmunications contracted or was under contract with Defendant Air2Web, a division of Velti, Inc. ("Air2Web") to transmit or cause to be transmitted to cellular telephones via the equipment of Air2Web data and messages obtained from customers of Textmunications, like Sensia, that Textmunications stored in its databases and then uploaded to Air2Web's equipment. Whether or not Sensia, Textmunications or Air2Web ultimately "dialed" the consumer's phone number, each had a high degree of involvement in the transmissions, and each is liable for the harm done by the transmissions.

3. The customer data of Sensia was transmitted to Textmunications and stored in its computer equipment and databases. Textmunications used its access to Air2Web's equipment and systems to upload Sensia's customer data and advertising or other messages into Air2Web's equipment from which it was blasted directly or indirectly in the form of SMS text messages to the cellular telephones of Sensia's former or current customers through a common carrier such as Verizon.

4. Whether or not Textmunication's access to the equipment of Air2Web was within the parameters of the agreement and established procedures, if any, between Textmunications and Air2Web is of no moment as, on information and belief, Air2Web could have and should

2.

have protected against misuse of the equipment and systems over which it had the exclusive right of control.  For example, Air2Web could have prevented misuse by restricting access by Textmunications or by monitoring the use of Textmunications. On information and belief, Plaintiffs allege that Air2Web failed to restrict or monitor Textmunications' access to its equipment and services to prevent their misuse.

5. The arrangement between Textmunication and Air2Web was designed to circumvent the regulations of the Federal Communications Commission ("FCC") and/or the Federal Trade Commission that implement the Telephone Consumer Protection Act ("TCPA").

6. FCC regulations implementing the TCPA forbid the transmission of SMS text calls to cellular phones via automatic telephone dialing systems without the express prior consent of the recipient.

7. Automatic telephone dialing systems are defined in terms of data storage and transmission capabilities. The separated equipment of Textmunications and Air2Web were established by them to divide the data storage and data transmission functions of SMS text message transmission equipment between these two companies so that no single company possessed all the necessary capacities to meet the definition of an automatic telephone dialing system.

8. Alternatively, the combined equipment and capacities of Textmunication, Air2Web, and various mobile telecommunication carriers constitute an automatic telephone dialing system within the meaning of the TCPA and FCC regulations.

9. Defendants, and each of them, during the Class Period conducted business, advertising and solicitation in this District by causing wireless spam to be transmitted to persons

including Plaintiffs in violation of the TCPA and of the right of privacy of such persons, who resided at the time within Texas and within the Southern District of Texas.

10. By effectuating text message calls for which they had no express prior consent of the recipients (hereinafter, "wireless spam") to the cellular telephones of Sensia customers, Defendants have caused Texas consumers and consumers within the Southern District of Texas actual harm not only because consumers were subjected to the aggravation that necessarily accompanies wireless spam, but also because consumers have to pay their cell phone service providers for the receipt of such wireless spam.

11. Defendants' transmission of wireless spam to Sensia customers without their prior express consent also invaded the customers' right to privacy.

12. Defendants and each of them entered into one or more agreements and otherwise combined to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.

13. In order to redress these injuries, Plaintiffs, on behalf of themselves and a statewide class of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("47 U.S.C. § 227") and TEX. BUS. & COM. CODE § 305-053, et seq. ("TEX. BUS. & COM. CODE § 305-053"), both of which prohibit unsolicited recorded voice and text calls to cellular phones.

14. Plaintiffs also seek redress for Defendants' invasion of the privacy of the proposed members of this Class.

15. On behalf of the Class, Plaintiffs seek an injunction requiring Defendants to cease all wireless spam activities and an award of multiple statutory damages to Plaintiffs and the

proposed class members and actual damages for invasions of privacy, together with costs and reasonable attorney fees.

16.     Both Textmunications and Air2Web had a high degree of involvement in the transmissions of wireless spam to Sensia customers or had actual notice of an illegal use and failed to take steps to prevent such transmissions.  See 68 Fed. Reg. 44144, 44169 (fax context).

17.     The TCPA and its implementing regulations clearly forbid persons dividing or joining their computer or telephone equipment in an effort to circumvent the law, and Textmunications and Air2Web, as persons of common intelligence, could have and should have understood the TCPA's prohibition of their joint efforts to transmit wireless spam to Sensia customers.

18.     Sensia, Textmunications and Air2Web are vicariously liable for the acts of one another including the illegal use of computer or telephone equipment under the TCPA and its implementing regulations and the invasions of Sensia customers' privacy.

19.     Interpreting the TCPA to exempt SMS text broadcasters, transmitters, intermediaries or advertisers would effectively allow each of these highly involved players in wireless spam to make an end-run around the TCPA's prohibitions.

**PARTIES**

20.     Plaintiff Milton H. Fried, Jr., is, and all times mentioned herein was, an individual citizen and resident of the State of Texas and a "called party" within the meaning of 47 C.F.R. § 64.1200(a)(1).

21.     Plaintiff Richard Evans is, and all times mentioned herein was, an individual citizen and resident of the State of Texas and a "called party" within the meaning of 47 C.F.R. § 64.1200(a)(1).

22. Defendant Sensia Salon, Inc., ("Sensia") is and all times mentioned herein was a Texas corporation doing business as Sensia Studio & Japanese Day Spa. It maintains its principal place of business at 1711 Post Oak Blvd., Houston, TX 77056. It has been served with process and has appeared in this action.

23. Defendant Textmunications, Inc., is a California corporation. It maintains its principal place of business at 1940 Contra Costa Blvd, Pleasant Hill, California 94523. It may be served through its agent for service of process, Yama Asefi, at 18 Dickson Ct., Martinez, California 94523. It contracted with Defendant Sensia for text messaging and other services such as a "database scrub" to be performed in Houston, Texas.

24. Defendant Air2Web is registered to do business in Georgia as a foreign corporation. It maintains its principal place of business at 3424 Peachtree Rd NE Suite 400, Atlanta, Georgia 30326. The Air2Web company was an Atlanta-based Wireless Application Service Provider that was launched in 1999. It provided integrated wireless services, functioning as an intermediary between a company and its wireless carrier. Since 2011, Air2Web is incorporated into mobile marketing solutions provider Velti, Inc., a Delaware corporation with corporate headquarters in San Francisco, California. Counsel for Velti/Air2Web has agreed to accept service of process.

## JURISDICTION & VENUE

25. The Court has jurisdiction because this class action was removed here by Defendant Sensia, and Plaintiffs did not oppose removal.

26. The Court also has jurisdiction pursuant to section 305.053 of the Texas Business and Commerce Code, which provides that a private cause of action may be brought in a Texas court to redress and enjoin violations of 47 U.S.C. Section 227.

27. The Court has personal jurisdiction over the Defendants Textmunication and Air2Web because, among other things, they engaged in a civil conspiracy with Sensia in Texas, committed a Texas tort which took place in Texas, and purposefully directed wireless spam and its harms toward Texas and its residents. Accordingly, Defendants should have reasonably anticipated being haled into court in Texas to answer for their tortious actions. Moreover, Defendants knew or should have known that the brunt of the injury from their wireless spam campaigns would be felt by Plaintiffs and other Sensia customers, who predominately are residents of the state of Texas and residents of this district.

28. Additionally, Defendants, and each of them, have continuous and systematic contacts with the state of Texas so as to have a presence here.

29. Jurisdiction also is proper in this Court because the amount in controversy claimed by Plaintiff exceeds the minimum jurisdictional limits of this court.

30. Venue is proper in this district because a substantial part of the events or omissions giving rise to the claim occurred in this District and because the Defendants do business in this District. 28 U.S.C.A. § 1391(b)(2).

**COMMON ALLEGATIONS OF FACT**

31. In recent years, marketers who have often felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and e-mail have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

32. One of the newest types of such bulk marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" is a messaging system that

allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, which are usually limited to 160 characters.

33. An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device by a cellular telephone service. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide.

34. Unlike more conventional advertisements, wireless spam actually costs its recipients money, because cell phone users must either pay their cellular telephone service providers for each text message call they receive, or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

35. Like fax advertising, the problem with wireless spam also is that it unfairly shifts advertising costs from the advertiser to the recipient of the message.

36. Over the course of an extended period of time prior to the commencement of this action, Defendant Sensia and its agents and co-conspirators, Defendants Textmunications and Air2Web, directed the mass transmission of wireless spam to the cell phones of Plaintiffs and of a proposed Class of persons, who Plaintiffs believe to be the existing or former customers of Defendant Sensia.

37. For instance, Plaintiffs' cell phones received text calls from Defendant Sensia within the period of limitations applicable to this action but on dates currently unknown to Plaintiffs, but including without limitation February 21, 2012, March 28, 2012, May 30, 2012, June 6, 2012, June 19, 2012, October 10, 2012, October 17, 2012, October 19, 2012, October 29,

2012, November 7, 2012, November 15, 2012, December 4, 2012, December 5, 2012, December 18, 2012, December 22, 2012, December 23, 2012, and January 2, 2013. (These dates are based on discovery materials produced to date,[1] which are incorporated herein by this reference but are not filed herewith due to file size).

38.     Upon information and belief, Defendants made similar transmissions of wireless spam to lists of cellular telephone numbers of Sensia's existing or former customers on a mass basis. Indeed, a contract executed between Defendants Sensia and Textmunications on or about February 2, 2012, calls for 8000 outbound SMS messages to be sent each month on Sensia's behalf.

39.     The method and equipment used to transmit these SMS text messages to Plaintiffs and the potential Class Members are that Sensia delivered content and a data list to Textmunications that was generated from the customer database of Sensia's computerized salon management system.  Textmunications stored the electronic information it received from Sensia and also uploaded it into Air2Web's systems and equipment.  Air2Web formatted the information for transmission and then caused the message or other content created by Sensia to be transmitted directly or indirectly via a mobile telecommunication carrier.  See Declaration of Harvey Scholl as Corporate Representative of Air2Web, Inc. (June 13, 2013 (attached as **Exhibit A**); Declaration of Harvey Scholl as Corporate Representative of Air2Web, Inc. (June 26, 2013 (attached as **Exhibit B**); Declaration of Wais Asefi as Corporate Representative of Textmunications, Inc. (attached as **Exhibit C**) (all three Declarations are incorporated as if fully set forth herein). In this manner, Defendants Sensia, Textmunications, and Air2Web violated the TCPA and invaded Plaintiffs' right to privacy.

---

[1] The discovery materials consist of documents bearing the following Bates numbers: MF000001 – MF000018; RE000001 – RE000005; SS000022 – SS000023; and SS000044.

9.

40. At the time they transmitted wireless spam as alleged herein, Defendants did not have the prior express consent of Plaintiffs or of the members of the proposed Class to receive it.

## CLASS ACTION ALLEGATIONS

41. Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of themselves and a class (the "Class") defined as follows:

> All citizens of the state of Texas who received one or more text messages on their cellular telephones sent by or on the behalf of Defendant Sensia.

42. The Judge, all Court personnel, the Defendants and their employees or agents, and Plaintiffs' Counsel are excluded from the Class.

43. Also excluded from the Class are those persons who had expressly consented to receiving text messages on their cellular telephones from Defendant Sensia prior to receiving them.

44. Plaintiffs, on information and belief, allege that the Class members number in the thousands, such that joinder of all members is impracticable.

45. Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiffs, nor their counsel, have any interest adverse to those of the other members of the Class.

46. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal

litigation in that it conserves the resources of the courts and the litigants, and it promotes consistency of adjudication.

47. Defendants have acted and failed to act on grounds generally applicable to the Plaintiffs and the other members of the Class in transmitting the wireless spam at issue, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class.

48. The factual and legal bases of Defendants' liability to Plaintiffs and to the other members of the Class are the same, resulting in injury to Plaintiffs and to all of the other members of the Class as a result of the transmission of the wireless spam alleged herein. Plaintiffs and the other Class members have all suffered harm and damages as a result of Defendants' unlawful and wrongful conduct.

49. There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include but are not limited to the following:

(a) Does the wireless spam Defendants distributed violate 47 U.S.C. § 227?

(b) Does the wireless spam Defendants distributed violate TEX. BUS. & COM. CODE § 305-053?

(c) Does the wireless spam Defendants distributed violate the right of privacy of its recipients who had not given their prior express consent to receive it?

(c) Are the Class members entitled to treble damages based on the willfulness of Defendants' conduct?

11.

## FIRST CLAIM FOR RELIEF

### (Violation of 47 U.S.C. § 227: On behalf of the Class)

50. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

51. Defendants made unsolicited commercial text message calls, including the messages referenced above, to the telephone numbers assigned to Plaintiffs and members of the Class by cellular telephone service providers. Each such text message call was made using equipment that either had the capacity to store or produce telephone numbers to be called, or used a random or sequential number generator. By using such equipment, Defendants were able effectively to send thousands of text messages simultaneously to lists of thousands of wireless cellular phone numbers of consumers without human intervention.

52. These text calls were made *en masse* through the use of a short code and without the prior express consent of the Plaintiffs and the other members of the Class to receive such wireless spam.

53. Defendants have, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants' conduct, the members of the Class, under section 227(b)(3)(B), are each entitled to, inter alia, a minimum of $500.00 in damages for each violation of such act, and an injunction to prevent further violations.

54. Because Defendants had knowledge that Plaintiffs and the Class did not consent to the receipt of the aforementioned wireless spam, the Court should, pursuant to section 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiffs and the other members of the Class.

**SECOND CLAIM FOR RELIEF**

**(Violation of TEX. BUS. & COM. CODE § 305-053: On behalf of the Class)**

55. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

56. Defendants made unsolicited commercial text calls, including the messages referenced above, to the wireless cellular telephone numbers of the Plaintiffs and the Class. Each such text message call was made using equipment that either had the capacity to store or produce telephone numbers to be called, or used a random or sequential number generator. By using such equipment, Defendants were able effectively to send thousands of text messages simultaneously to lists of thousands of wireless cellular phone numbers of consumers without human intervention.

57. These text calls were made *en masse* through the use of a short code and without the prior express consent of the Plaintiffs and the other members of the Class to receive such wireless spam.

58. Defendants have, therefore, violated 47 U.S.C. § 227. Pursuant to TEX. BUS. & COM. CODE § 305-053, any person who originates a communication in violation of 47 U.S.C. § 227, also violates TEX. BUS. & COM. CODE § 305-053. As a result of Defendants' conduct, the members of the Class under TEX. BUS. & COM. CODE § 305-053(b) are each entitled to the greater of $500.00 for each violation or the plaintiff's actual damages. Furthermore, if the Court finds that the Defendants committed the violation knowingly or intentionally, the Court may increase the amount of the award of damages to: (1) not more than the greater of $1,500.00 per violation; or (2) three times the plaintiff's actual damages. TEX. BUS. & COM. CODE §

305-053(c). Finally, TEX. BUS. & COM. CODE § 305-053(a) provides for an injunction to prevent further violations.

59. Because Defendants had knowledge that Plaintiffs and the proposed Class did not expressly consent to the receipt of the aforementioned wireless spam, the Court should, pursuant to TEX. BUS. & COM. CODE § 305-053(c), award Plaintiffs and the putative class members additional damages.

### THIRD CLAIM FOR RELIEF

### (Invasion of Privacy: On behalf of the Class)

60. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

61. Defendants made unsolicited commercial text calls, including the messages referenced above, to the wireless cellular telephone numbers of the Plaintiffs and of the Class and thereby published text messages to them.

62. Defendants' SMS text calls constituted an intrusion, physically or otherwise, upon Plaintiffs' and the proposed Class Members' solitude, seclusion, or private affairs or concerns that would be highly offensive to a reasonable person.

63. Plaintiffs and the proposed Class suffered actual damages proximately caused by Defendants' invasions of their privacy.

### FOURTH CLAIM FOR RELIEF

### (Conspiracy: On behalf of the Class)

64. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

65. Defendants agreed or otherwise combined to send wireless spam promoting Sensia, including the messages referenced above, to the wireless cellular telephone numbers of the Plaintiffs and the Class.

66. The object of the agreements or combination was to attempt to circumvent the TCPA and FCC regulations by combining equipment and capacities as described above to send SMS text messages (wireless spam) to Sensia customers and to others.

67. Defendants had a meeting of the minds and acted in concert on the object or course of action, and one or more unlawful, overt acts were committed in furtherance of the object of their conspiracy.

68. Plaintiffs and the members of the proposed Class suffered damages as the proximate result of Defendants' conspiracy.

WHEREFORE, Plaintiffs Milton H. Fried, Jr., and Richard Evans, on behalf of themselves and the Class, pray for the following relief:

1. An order certifying the Class as defined above and appointing Plaintiffs' lawyers as Class Counsel;

2. An award of actual or statutory damages;

3. An injunction requiring Defendants to cease all wireless spam activities;

4. An incentive award for Plaintiffs;

5. An award of reasonable attorneys' fees and costs; and

6. Such further and other relief the Court deems reasonable and just.

**JURY DEMAND**

Plaintiffs request trial by jury of all claims that may be so tried.

                              Respectfully submitted,

                              s/Debra Brewer Hayes_____
                              DEBRA BREWER HAYES, Of Counsel
                              Fed. Id. 7443
                              CHARLES CLINTON HUNTER
                              Fed. Id. 876012
                              **REICH & BINSTOCK, LLP**
                              4265 San Felipe, Suite 1000
                              Houston, TX 77027
                              281-768-4716 Direct
                              713-622-7271 Main
                              713-623-8724 Fax
                              dhayes@dhayeslaw.com
                              chunter@rbfirm.net

                              Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing was filed via the Court's CM/ECF electronic filing system which will send an electronic notice to:

Geoffrey Bracken
Gardere Wynne Sewell LLP
1000 Louisiana, Ste. 3400
Houston, TX  77002

Rhonda Reed Weiner
Gardere Wynne Sewell LLP
1000 Louisiana, Ste. 3400
Houston, TX  77002

Jessica Mason
Gardere Wynne Sewell LLP
1000 Louisiana, Ste. 3400
Houston, TX  77002

Attorneys for Defendant Sensia

On this 2nd day of August, 2013.

Charles Clinton Hunter
E-mail:  chunter@rbfirm.net