IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MILTON H. FRIED JR., *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:13-cv-00312 |
| | § | |
| SENSIA SALON, INC., *et al.*, | § | |
| Defendants. | § | |

# MEMORANDUM AND ORDER

This telecommunications case is before the Court on the Motion to Stay Proceedings Pending Primary Jurisdiction Referral [Doc. # 52] ("Primary Jurisdiction Motion") of Defendant Sensia Salon, Inc. ("Sensia").[1] Plaintiffs Milton H. Fried, Jr. ("Fried) and Richard Evans ("Evans," and together with Fried, "Plaintiffs") filed a

---

[1] Defendant Air2Web, Inc. ("Air2Web") joined Sensia's Primary Jurisdiction Motion after it was filed [Doc. # 64]. On November 4, 2013, Air2Web filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code [Doc. # 79]. Under 11 U.S.C. § 362, all proceedings in this case against Air2Web are automatically stayed. Accordingly, the Court does not rule on Air2Web's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 8, and 23 [Doc. # 56], as an adverse ruling could impact the bankruptcy estate in violation of the automatic stay.

The Court requested that the remaining parties submit to the Court a statement setting forth that party's views on how the stay under 11 U.S.C. § 362 otherwise impacts the proceedings. *See* Order of November 8, 2013 [Doc. # 80]. Both Plaintiffs and Sensia stated that the automatic stay applies only to Air2Web and have urged the Court to continue the action as against the other defendants. Statement of Plaintiffs [Doc. # 81]; Statement of Sensia [Doc. # 82].

Response in Opposition to the Motion to Stay [Doc. # 55], to which Sensia filed a Reply [Doc. # 59]. Plaintiffs also filed a Supplemental Response to the Motion to Stay [Doc. # 67] and a Supplemental Brief on Bifurcation [Doc. # 72], to which Sensia filed a Reply [Doc. # 73] and a Second Supplemental Reply [Doc. # 78]. Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court **grants** Sensia's Motion to Stay.

I.  BACKGROUND

Defendant Sensia owns and operates a beauty salon named Sensia Studio & Japanese Day Spa, which is located in Houston, Texas.[2] On or about February 2, 2012, Sensia contracted with a mobile technology company, Defendant Textmunications, Inc. ("Textmunications"),[3] to transmit advertisements in the form of text messages[4] to Sensia's former and current customers in Texas.[5] A list of

---

[2]  Third Amended Class Action Complaint for Injunction and Damages [Doc. # 35] ("Complaint"), ¶¶ 1, 22.

[3]  Sensia, Textmunications, and Air2Web will together be referred to as "Defendants."

[4]  The parties refer to these communications interchangeably as "text calls," "text messages," "text message calls," and "SMS messages." For the sake of clarity, the Court will adopt the colloquial "text messages" when referring to these communications.

[5]  *Id.*, ¶¶ 32, 38.

customers was generated using Sensia's computerized management system.[6] Textmunications, in turn, contracted with Defendant Air2Web to transmit Sensia's messages to the supplied list of customers.[7] Thus, Textmunications was Air2Web's direct customer, while Sensia provided the content for the transmitted messages.[8]

On January 11, 2013, Plaintiff Fried filed a class action complaint against Sensia in the 80th Judicial District of the District Court of Harris County, Texas [Doc. # 1-3].[9] Sensia timely removed the case to this Court on February 7, 2013 [Doc. # 1]. On August 2, 2013, Plaintiffs filed an amended complaint, adding Textmunications and Air2Web as defendants [Doc. # 35] ("Complaint"). In the Complaint, Plaintiffs allege that they received at least seventeen text messages from Sensia between February 2012 and January 2013, and that other former or current Sensia customers also received similar text messages during this period.[10] Plaintiffs allege that, in sending these messages, Defendants: (1) violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"); (2) violated § 305-053 of the Texas Business and

---

[6] *Id.*, ¶ 39.

[7] *Id.*, ¶ 2.

[8] Declaration of Harvey Scholl [Doc. # 71-1] ("Scholl Decl."), ¶ 5.

[9] Plaintiff Evans was added as a party plaintiff in Plaintiffs' Second Amended Class Action Complaint for Injunction and Damages [Doc. # 15].

[10] Complaint, ¶¶ 37-38.

Commerce Code ("TBCC"); (3) invaded Plaintiffs' privacy; and (4) engaged in a conspiracy to violate the TCPA and TBCC.[11] Plaintiffs seek to certify a class with respect to each of its causes of action. Sensia and Air2Web have appeared and answered or otherwise responded to the Complaint.[12]

Some background technical information provided by Air2Web about the operation of its equipment and its relationship among and the roles of the entities before the Court will inform this Court's analysis. Air2Web, a division of Velti, Inc., is a mobile messaging aggregator ("MMA").[13] MMAs serve as a "conduit in the chain of transmission" of short message service ("SMS") messages "between content providers (those entities that draft and send text messages) ("Content Providers") and subscribers (those who receive text messages) ("Subscribers") of mobile telephony

---

[11] *Id.*, ¶¶ 50-68. Plaintiffs are not entirely clear as to whether the conspiracy they allege refers to all three prior causes of action or only to their claims under the TCPA and the TBCC. Because Plaintiffs state that "[t]he object of the agreements or combination was to attempt to circumvent the TCPA and FCC regulations," *id.*, ¶ 66, the Court understands the conspiracy allegation to refer solely to the TCPA and TBCC causes of action.

[12] As noted earlier, Air2Web has filed a motion to dismiss for failure by Plaintiffs to state a claim [Doc. # 56]. Textmunications has not appeared or answered and Plaintiffs seek entry of default against that entity and a hearing on damages [Doc. # 76].

[13] Scholl Decl., ¶ 2.

services offered by mobile-telecommunication carriers ("Carriers")."[14] MMAs, such as Air2Web, receive the content of text messages from a customer, who determines the recipients of the messages.[15] The customer provides this data (text message content and recipient information) to the MMA, and the MMA then transmits the data to mobile-telephone carriers, which pass along the messages to their subscribers.[16]

Importantly, Air2Web does not draft text messages.[17] Rather, after receiving the required information from a customer, Air2Web formats the information into Short Message Peer-to-Peer ("SMPP") protocol, and then transmits the properly formatted messages to the appropriate carriers.[18] Air2Web only transmits content and messages as directed by its customers.[19]

Air2Web is a Tier 1 MMA.[20] Tier 1 MMAs "have direct, contractual relationships with some or all of the major carriers (*i.e.*, AT&T, Sprint, T-Mobile and

---

[14] *Id.*, ¶ 2.

[15] *Id.*, ¶ 3.

[16] *Id.*, ¶ 3.

[17] *Id.*, ¶ 5.

[18] *Id.*, ¶ 4(b).

[19] *Id.*, ¶ 4(c).

[20] *Id.*, ¶ 10.

Verizon) and other smaller Carriers."[21] Under these contracts, Air2Web maintains direct "binds" (a type of persistent socket connection) with the carriers' networks through which it delivers its customer's messages.[22] Air2Web does not "signal," or dial, a carrier to establish a telecommunications circuit prior to transmitting a message.[23]

## II.   PRIMARY JURISDICTION

### A.   Legal Standard

"The doctrine of primary jurisdiction applies either when a government agency has exclusive original jurisdiction over an issue within a case or when a court having jurisdiction wishes to defer to an agency's superior expertise." *ASAP Paging Inc. v. CenturyTel of San Marcos Inc.*, 137 F. App'x 694, 697 (5th Cir. 2005); *see also Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002). Underlying this doctrine is the concern for "promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *Mercury Motor Express, Inc. v. Brinke*, 475 F.2d 1086, 1092 (5th Cir. 1973); *see also Ellis v. Tribune Television Co.*, 443 F.3d 71, 81 (2d Cir. 2006) ("The doctrine's

---

[21]   *Id.*

[22]   *Id.*, ¶¶ 10-11.

[23]   *Id.*, ¶¶ 9, 11.

central aim is to allocate initial decisionmaking responsibility between courts and agencies and to ensure that they do not work at cross purposes." (internal citation omitted)). Referring a question[24] to the appropriate agency under this doctrine "is favored when (a) it will promote even-handed treatment and uniformity in a highly regulated area, or when sporadic action by federal courts would disrupt an agency's delicate regulatory scheme; or (b) the agency possesses expertise in a specialized area with which the court are relatively unfamiliar." *Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 811 (5th Cir. 2011) (citing *Mercury Motor Express*, 475 F.2d at 1092).

"No fixed formula exists for applying the doctrine of primary jurisdiction." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956). Whether to refer an issue to an agency under the doctrine of primary jurisdiction must be made on case-by-case basis. *General Elec. Co. v. MV Nedlloyd*, 817 F.2d 1022, 1026 (2d Cir. 1987). A district court should use its discretion and refer a matter to the agency "only if the benefits of obtaining the agency's aid outweigh the need to resolve the litigation

---

[24] Most courts describe this process as "referral" to an administrative agency. As the Supreme Court noted in *Reiter v. Cooper*, the Court does not actually "refer" the disputed issue to the agency for resolution, as most statutes (including the TCPA) do not provide a mechanism for the court to do so. Rather, the district court can stay the action "so as to give the plaintiff a reasonable opportunity within which to apply to the Commission for a ruling as to the reasonableness of the practice." *Reiter v. Cooper*, 507 U.S. 258, 268 n.3 (1993) (citing *Mitchell Coal & Coke Co. v. Pa. R. Co.*, 230 U.S. 247, 267 (1913)).

expeditiously." *Gulf States Util. Co. v. Ala. Power Co.*, 824 F.3d 1465, 1473 (5th Cir. 1987). Factors to be considered in striking this balance include "how agency action will aid the litigation; whether the litigation involves conduct requiring continuing supervision by the agency; whether the issues to be litigated are unique to regulated industries; and whether proceedings already are pending before the agency." *See Brown*, 277 F.3d at 1171-72. If a court decides to refer a matter for agency review, the court also "has discretion either to retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice." *Reiter v. Cooper*, 507 U.S. 258, 268-69 (1993).

**B.   Analysis**

The TCPA, enacted in 1991, makes it "unlawful for any person within the United States . . . to make any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call."  47 U.S.C. § 227(b)(1)(A)(iii). Furthermore, under the TCPA an automatic telephone dialing system ("ATDS") is defined as "equipment that has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1). In their

Complaint, Plaintiffs allege that Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii) by sending Plaintiffs unsolicited text messages with equipment that "either had the capacity to store or produce telephone numbers to be called, or used a random or sequential number generator."[25]

The Federal Communications Commission ("FCC") has previously held that text messages are equivalent to "calls" for the purposes of the TCPA. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003) ("We affirm that under the TCPA, it is unlawful to make *any call* using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number . . . . This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls . . ." (emphasis in original)); *Satterfield v. Simon & Shuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (deferring to FCC's interpretation, under *Chevron*, that "call" encompasses text messages). The parties here do not dispute this interpretation.[26]

At the heart of this case is whether the technology used by Defendants to send text messages to Plaintiffs qualifies as an ATDS. The motion at hand does not

---

[25] Complaint, ¶ 51.

[26] *See* Plaintiffs' Response [Doc. # 55], at 7 n.2.

require this Court to decide the merits of that dispute. Rather, the question presented by the motion is *who* should opine first on that issue: the FCC or this Court?

Sensia asserts that the "question of whether this system is an unlawful autodialer is primed for resolution by the FCC."[27] Sensia contends that the system used to send text messages to Plaintiffs "indisputably does not dial," and "a finding that the system is unlawful can only be made by rewriting the statute to remove the requirement that the system be able to dial a telephone number."[28] Furthermore, Sensia cautions that "an adjudication that the system violates the TCPA will result in the imposition of billions upon billions of dollars in liability overnight" on the MMAs and their clients who utilized this system with the understanding that it did not violate the TCPA.[29]

Plaintiffs, in contrast, argue that the FCC has not always adhered to the statutory language of the TCPA.[30] Moreover, Plaintiffs contend that the FCC, rather than focusing on whether a message was "dialed," have focused on whether a

---

[27]  Defendant's Motion [Doc. #52], at 4.

[28]  *Id.*

[29]  *Id.* at 4-5.

[30]  Plaintiffs' Response [Doc. # 55], at 6.

telephone number was "called" and, as a result, cost the consumer money.[31] According to Plaintiffs, the issue that ultimately must be decided is "whether Defendants' equipment has the capacity to call cellular telephone numbers without human intervention and shift the cost of Sensia's advertising to its customers in violation [of] the TCPA."[32] To support their argument, Plaintiffs point the Court to an FCC report and order that concluded that messages sent to computer-based fax servers should be treated as messages sent to fax machines for the purposes of the TCPA.[33] *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. at 14018-22, 14124-35. Accordingly, Plaintiffs urge that this Court, and not the FCC, can and should decide whether Defendants' equipment counts as an ATDS.

The parties do not appear to disagree as to the technical aspects of the equipment at issue. Defendant Air2Web has submitted a declaration from its Chief Technology Officer, Harvey Scholl, which states that Air2Web's system does not "dial" phone numbers, but rather delivers messages to recipients via direct binds with

---

[31] *Id.* at 6-7; *see also id.* at 8 ("Whether the message is 'dialed' or faxed or transmitted through non-dialing equipment is irrelevant.").

[32] *Id.* at 11.

[33] *Id.* at 8-9.

carrier networks.[34] Plaintiffs do not contest this fact, but instead refer the Court to FCC orders and reports that have supposedly diverged from the literal wording of the TCPA.

The Court concludes that the FCC is in the best position to opine, in the first instance,[35] on the technical and potentially far-reaching issues implicated in Plaintiffs' claims, namely, whether the use of Air2Web's and Textmunications' systems to transmit text messages to potential customers identified by Sensia violates the TCPA. The FCC has particular expertise in this field of telecommunications, enabling the agency to make a decision based on technical and technological knowledge not necessarily available to this Court. Furthermore, the FCC has significant experience analyzing and interpreting this statute, and has previously addressed the definition of "automatic telephone dialing system" under the ATDS. *See, e.g.*, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. at 14090-95 (discussing whether a predictive dialer qualifies as an "automatic telephone dialing system" under the TCPA); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice

---

[34]  Scholl Decl., ¶¶ 9-11.

[35]  The Court's conclusion that the FCC should initially opine on this matter is not to say that the Court will ultimately be bound by the agency's interpretation.

of Proposed Rulemaking and Memorandum Opinion and Order, 17 FCC Rcd. 17459, 17473-76 (Sept. 18, 2002) (seeking comment on whether certain autodialers, including predictive dialers, qualify as "automatic telephone dialing systems" under the TCPA); *see also In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 27 FCC Rcd. 15391, 15392-94 (Nov. 29, 2012) (raising applicant's argument that equipment used to send text messages was not a ATDS because it "does not have the capacity to store or produce telephone numbers to be called using a random or sequential number generator to dial such numbers," but ultimately issuing a declaratory ruling on other grounds). Thus, the FCC is in a prime position to determine whether the use of this technology violates the TCPA.

The other factors on which courts have focused in considering referral of a matter under the doctrine of primary jurisdiction also point towards FCC referral. Air2Web is not the only company that employs this type of technology; numerous companies appear to use a comparable product. The FCC, as noted, is the primary agency responsible for dealing with the telecommunications industry, and the issues litigated here are unique to that industry. Moreover, technology in the telecommunications field is rapidly changing. Indeed, it appears that technological innovation is outpacing Congress' ability to respond to changes in the field with

appropriate legislation. The FCC has regulatory power over this industry and can respond to changes in the industry through regulations, reports and orders, declaratory rulings, and other available tools. Because the FCC must continually supervise companies and technologies that engage in mass messaging services, such as MMAs, it is appropriate for the agency to decide, at least in the first instance, contested issues relating to new messaging technologies.[36] *Cf. Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 865-66 (1984) ("Judges are not experts in the field, and are not part of either political branch of the Government . . . . [I]t is entirely appropriate for this political branch of the Government to make such policy choices—resolving the competing interests which Congress itself either inadvertently did not resolve, or intentionally left to be resolved by the agency charged with administration of the statute in light of everyday realities.").

Plaintiffs point this Court to *Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723 (N.D. Ill. 2011), to support their position that this Court need not defer to the primary jurisdiction of the FCC. In *Griffith*, plaintiffs brought suit under the TCPA against a sub-prime auto-finance lender on the grounds that the lender used a

---

[36] The text of the TCPA makes clear that an ATDS must have the capacity to "dial" numbers. The Court is not in a position to ignore the statutory text. Regardless whether the FCC has, as Plaintiffs suggest, diverged from a strict application of the statutory text in the past, it is for the FCC to decide, at least initially, whether such an interpretation is appropriate here.

predictive auto-dialer to place debt-collection calls. *Id.* at 723-34. The Court there recognized that the FCC had already decided that predictive dialers met the definition of an ATDS under the statute. *Id.* at 726. Thus, the court stated that defendant's argument that its system was not an ATDS was "a transparent attempt to win through litigation a battle that other companies lost before the FCC." *Id.* Furthermore, the court rejected the defendant's argument that the FCC's order was inconsistent with the TCPA, finding that "[t]his is not the appropriate forum to challenge the validity of the FCC's orders" and that "[o]ur role is to apply the FCC's orders to the facts." *Id.* at 727.

The Court finds *Griffith* unavailing in the case at hand. First, the issue of primary jurisdiction, the crux of the dispute here, was not raised by the parties in *Griffith*. Furthermore, in *Griffith* the FCC had already decided the question before the court, while, here, the FCC has not addressed or given any indication whether this technology is considered an ATDS under the TCPA. That question, which remains open, is best addressed by the FCC itself.

### III.  CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Defendant Air2Web's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 8, and 23 [Doc. # 56] is **TERMINATED**

**without prejudice**. It is further

**ORDERED** that Defendant Sensia's Motion to Stay Proceedings Pending Primary Jurisdiction Referral [Doc. # 52] is **GRANTED**. The parties shall request from the Federal Communications Commission a ruling on whether the equipment Defendants' employed to send text messages to Plaintiffs qualifies as an automatic telephone dialing system in violation of the Telephone Consumer Protection Act. **The Court urges the FCC to act promptly on this matter, as the issues have widespread implications.** It is further

**ORDERED** that the parties shall jointly provide the Court with a written status report the 30th of each May and November, describing the status of the Federal Communications Commission proceeding, including without limitation any information regarding rulings that the agency has issued. It is further

**ORDERED** that on or before **January 13, 2014**, the parties shall jointly provide the Court with a status report regarding the mediation of Plaintiffs' invasion of privacy claim.

SIGNED at Houston, Texas, this 27th day of **November, 2013.**

_Nancy F. Atlas_
Nancy F. Atlas
United States District Judge